UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT HALL, an individual,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>VAL-CHRIS INVESTMENTS, INC.,<br>a business entity; LOANCUTTERS, INC.<br>dba EVOQUE LENDING, a corporation;<br>and DOES 1–50, inclusive,<br><br>　　　　　　　　　　　Defendants. | Case No.: 23-CV-1349 TWR (JLB)<br><br>**ORDER (1) GRANTING PLAINTIFF'S *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER TO RESTRAIN A TRUSTEE'S SALE, AND (2) FOR DEFENDANTS TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**<br><br>(ECF No. 5) |

　　　　Presently before the Court is Plaintiff Robert Hall's *Ex Parte* Application for a Temporary Restraining Order to Restrain a Trustee's Sale ("*Ex Parte* App.," ECF No. 5). Plaintiff's counsel provided notice to Defendants Val-Chris Investments, Inc. ("Val-Chris") and LoanCutters, Inc. dba Evoque Lending ("Evoque") at approximately noon on July 25, 2023. (*See* ECF No. 5-2 ("Adair Decl.") ¶¶ 3–5.) Defendant Val-Chris filed an Opposition to the *Ex Parte* Application ("Opp'n," ECF No. 7) on the evening of July 26, 2023. As of the date of this Order, Defendant Evoque has not filed a response to the *Ex Parte* Application. (*See generally* Docket.)

Having carefully considered the record, Plaintiff's arguments, and the relevant law, the Court **GRANTS** Plaintiff's *Ex Parte* Application and **SETS** an Evidentiary Hearing to determine whether a preliminary injunction should issue as follows.

## BACKGROUND

Plaintiff purchased the real property located at 1557 Regatta Road, Carlsbad, California 92011 (the "Subject Property") in 1999. (*See* ECF No. 5-3 ("Hall Decl.") ¶¶ 1–2.) Over the intervening twenty-four years, the Subject Property has been Plaintiff's primary residence, and Plaintiff built up over $1 million of equity in the Subject Property. (*See id.* ¶ 2.)

When COVID-19 struck in March 2020, however, Plaintiff's business—Commencement Flowers, (*see* ECF No. 7-1 ("LaMotte Decl.") ¶ 4 & ECF No. 7-1 at 19 ("Ex. 3"),[1] 21 ("Ex. 4"))—suffered. (*See* Hall Decl. ¶ 3.) To pay his mortgage and keep his business afloat, Plaintiff took out hard-money loans, including a hard-money business-purpose lien through T&S Bluestone Trust. (*See id.* ¶¶ 3–4; *see also* ECF No. 7-1 at 25 ("Ex. 6").) In November 2022, Plaintiff sought to refinance through Defendant Val-Chris, (*see* Hall Decl. ¶ 4), with Defendant Evoque serving as broker, (*see* Ex. 6), and one of Evoque's senior lending specialists, Ahndrea Marx, serving as Plaintiff's main contact throughout the refinance process. (*See* Hall Decl. ¶ 8.) The Parties disagree, however, as to the agreed-upon terms. (*Compare* Hall Decl., *with* LaMotte Decl.)

For its part, Val-Chris contends that it and Plaintiff discussed entering into a loan on the following terms: $770,000.00 at 12.99% interest with monthly payments of approximately $8,300 and a cash-out of $81,000.00 after closing (the "original terms"). (*See* LaMotte Decl. ¶ 5 & ECF No. 7-1 at 23 ("Ex. 5").) Plaintiff signed a Declaration of Oral Disclosure regarding these terms on October 19, 2022. (*See id.*) Plaintiff and Val-Chris, however, later agreed to amend the original terms, (*see id.* ¶ 6), and, on

---

[1] To avoid ambiguity, pin citations to ECF Nos. 5-3 and 7-1 refer to the CM/ECF pagination electronically stamped in the top, right-hand corner of each page.

1    November 30, 2022, Plaintiff obtained a loan for $750,000 at 14.99% interest with monthly
2    payments exceeding $9,000 and a cash out of $58,000 at closing (the "revised terms").
3    (*See id.* ¶¶ 3, 6.)  Accordingly, the original terms were crossed out and changed to the
4    revised terms on the Declaration of Oral Disclosure, which Plaintiff again signed on
5    November 30, 2022:

>    ~~X7O,OOOX~~  $750,000  *ATH*  _____Loan Amount
>    ~~X2.X9X~~    14.99%    *ATH*  _____Note Rate
>    ~~X,XX5.2X~~  $9368.75  *RTH*  _____Monthly Payment

9    (*See id.* ¶ 7 & Ex. 5; *see also* ECF No. 5-3 at 8 ("Ex. B").)  Plaintiff further acknowledged
10   and accepted the revised terms by signing the Note, Deed of Trust, and Certificate of
11   Business Purposes of Loan, all of which indicate that the loan was in the amount of
12   $750,000, (*see id.* ¶ 9 & ECF Nos. 7-1 at 7–9 ("Ex. 1"), 11–17 ("Ex. 2"); Ex. 3), and a
13   Settlement Statement including an amount "Due To Borrower" of $58,159.66.  (*See id.*
14   ¶ 11 & ECF No. 7-1 at 25–26 ("Ex. 6").)

15     Plaintiff, on the other hand, claims that he agreed to—and signed in the presence of
16   a notary—the original terms in December 2022.  (*See* Hall Decl. ¶ 5.)  After closing,
17   Plaintiff received only two payments totaling $58,000 in late December 2022, (*see id.* ¶ 6),
18   and he never received a copy of the fully executed loan documents.  (*See id.* ¶ 7.)  On
19   January 28, 2023, Marx sent Plaintiff the executed documents.  (*See id.* ¶ 10.)  Plaintiff
20   was "shock[ed]" to see that the original terms had been crossed out and replaced by the
21   revised terms.  (*See id.*; *see also* ECF No. 5-3 at 8 ("Ex. B").)

22     The Parties agree that Plaintiff's first payment was due February 1, 2023, (*compare*
23   LaMotte Decl. ¶ 10 & Ex. 1, *with* Hall Decl. ¶ 13; *see also* ECF No. 5-3 at 10 ("Ex. C")),
24   but Plaintiff contends that Marx provided him with an erroneous date of March 23, 2023.
25   (*See* Hall Decl. ¶ 9.)  Further, Plaintiff claims that he did not receive his first statement
26   from Val-Chris until March 2023, (*see id.* ¶ 12), which—despite being only one month
27   after his initial payment was due—indicated that the Total Amount Due was $30,010.01,
28   comprised of a Payment Amount of $9,368.75, Past Due Payments of $18,737.50, Late

Charges Due of $1,873.76, and Unpaid Charges of $30.00.  (*See* ECF No. 5-3 at 16 ("Ex. E"); *see also* Hall Decl. ¶ 14.)  Val-Chris, however, attests that it received an initial payment from Plaintiff on February 6, 2023, which was ultimately returned for insufficient funds.  (*See* LaMotte Decl. ¶ 12 & ECF No. 7-1 at 32 ("Ex. 8").)

On March 23, 2023, Val-Chris recorded a Notice of Default in the amount of $24,229.76.  (*See* Hall Decl. ¶¶ 11, 13; LaMotte Decl. ¶¶ 13–14; *see also* ECF No. 5-3 at 12–14 ("Ex. D"); ECF No. 7-1 at 28–30 ("Ex. 7").)  After Val-Chris recorded the Notice of Default, Plaintiff received calls and emails from "hundreds of people" claiming that they could help him remedy the situation.  (*See* Hall Decl. ¶ 17.)  Plaintiff was "overwhelmed" by the communications and did not know whom to trust.  (*See id.*)  One of the people who contacted him, for example, was a scammer who listed the Subject Property for sale without Plaintiff's knowledge.  (*See id.* ¶ 18.)

On June 28, 2023, Val-Chris recorded a Notice of Trustee's Sale indicating that Plaintiff was in arrears by approximately $82,227.21.[2]  (*See id.* ¶ 15.)  Plaintiff believes this amount to be significantly inflated, perhaps by as much as $30,000, by the 6% "default-interest" rate included in the Note.  (*See id.* ¶¶ 15–16; *see also* ECF No. 5-3 at 18 ("Ex. F").)  The Trustee's Sale is currently scheduled for August 2, 2023.  (*See* Hall Decl. ¶ 19.)  Absent a temporary restraining order, Plaintiff is likely to lose the Subject Property on that date.  (*See id.* ¶¶ 19–20.)

Consequently, Plaintiff filed suit in the Superior Court of California, County of San Diego, on July 20, 2023.  (*See* Adair Decl. ¶ 2.)  After the filing was rejected on July 25, 2023, for containing "non-searchable" exhibits, Plaintiff refiled in this Court.  (*See id.*; *see also generally* ECF No. 1 ("Compl.").)  Plaintiff alleges eight causes of action for (1) common law fraud against all Defendants; (2) common law breach of contract as to

---

[2] As of July 26, 2023, Val-Chris's records indicate that the loan is in arrears in the amount of $830,106.12. (*See* LaMotte Decl. ¶ 15 & ECF No. 7-1 at 34–35 ("Ex. 9").)  The Court notes, however, that Exhibit 9 is not fully legible.

1  Val-Chris and Evoque; (3) violation of California Civil Code §§ 2924c–d as to Val-Chris;
2  (4) violation of California Civil Code § 2924(a)(1)(C) as to Val-Chris; (5) violation of
3  California's Truth in Lending Act ("TILA"), Cal. Fin. Code §§ 4970–4979.8, as to Val-
4  Chris; (6) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C.
5  §§ 1692–1692p, as to Val-Chris; (7) negligent misrepresentation as to Evoque; and
6  (8) unfair competition in violation of California Business and Professions Code
7  §§ 17200–17209 against all Defendants. (*See generally* Compl. ¶¶ 29–81.)

8  That same day, Plaintiff filed the *Ex Parte* Application, (*see generally* ECF No. 3),
9  after first attempting to notify Defendants via email. (*See* Adair Decl. ¶¶ 3–5.) Because
10 "the signatory attorney did not match the filing attorney," Plaintiffs withdrew, (*see* ECF
11 No. 4), and then refiled, (*see generally* ECF No. 5), the instant *Ex Parte* Application on
12 July 26, 2023. Val-Chris filed its Opposition later that day. (*See generally* ECF No. 7.)

## LEGAL STANDARD

14 Federal Rule of Civil Procedure 65 authorizes a trial judge to grant a temporary
15 restraining order ("TRO") under certain circumstances "to preserve the status quo and the
16 rights of the parties until a final judgment issues in the cause." *See Ramos v. Wolf*, 975
17 F.3d 872, 887 (9th Cir. 2020) (quoting *U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d
18 1091, 1094 (9th Cir. 2010)). "A preliminary injunction [or temporary restraining order]
19 . . . is not a preliminary adjudication on the merits[,] but rather a device for preserving the
20 status quo and preventing the irreparable loss of rights before judgment." *Id.* (alteration in
21 original) (quoting *Sierra On-Line, Inc. v. Phx. Software, Inc.*, 739 F.2d 1415, 1422 (9th
22 Cir. 1984)). The status quo in this context "refers not simply to any situation before the
23 filing of a lawsuit, but instead to 'the last uncontested status which preceded the pending
24 controversy[.]'" *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir.
25 2000) (quoting *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963)).

26 "The standard for issuing a temporary restraining order is identical to the standard
27 for issuing a preliminary injunction." *Lockheed Missile & Space Co. v. Hughes Aircraft*
28 *Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). "A party seeking a preliminary injunction

must meet one of two variants of the same standard." *Ramos*, 975 F.3d at 887 (quoting *All. for Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017)).

> Under the original standard, plaintiffs seeking a preliminary injunction must establish that: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest.

*Id.* (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "The Ninth Circuit employs an alternative 'serious questions' standard, also known as the 'sliding scale' variant of the *Winter* standard." *Id.* (citing *All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011)).

> Under this alternate standard, [the court] weigh[s] the preliminary injunction factors on a sliding scale, such that where there are only serious questions going to the merits—that is, less than a likelihood of success on the merits—a preliminary injunction may still issue so long as the balance of hardships tips sharply in the plaintiff's favor and the other two factors are satisfied.

*Id.* at 887–88 (internal quotation marks omitted) (quoting *Short v. Brown*, 893 F.3d 671, 675 (9th Cir. 2018)). In other words, "[a] preliminary injunction may be granted . . . where the moving party demonstrates either '(1) a combination of probable success on the merits *and* the possibility of irreparable injury *or* (2) the existence of serious questions going to the merits *and* that the balance of hardships tips sharply in [its] favor.'" *Grocery Outlet Inc. v. Albertson's Inc.*, 497 F.3d 949, 951 (9th Cir. 2007) (emphasis and second alteration in original) (quoting *Sardi's Rest. Corp. v. Sardie*, 755 F.2d 719, 723 (9th Cir. 1985)).

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. Consequently, there are several limitations on when "[t]he court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney," *see* Fed. R. Civ. P. 65(b), and "[t]he court may issue a . . . temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined." *See* Fed. R.

Civ. P. 65(c).  Further, "every restraining order must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required."  Fed. R. Civ. P. 65(d)(1).

"In deciding a motion for a preliminary injunction, the district court 'is not bound to decide doubtful and difficult questions of law or disputed questions of fact.'"  *Int'l Molders' & Allied Workers' Loc. Union No. 164 v. Nelson*, 799 F.2d 547, 551 (9th Cir. 1986) (quoting *Dymo Indus., Inc. v. Tapewriter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964)).  Whether to "grant . . . a preliminary injunction is a matter committed to the discretion of the trial judge[,]" and that decision will be "reverse[d] only if that discretion is abused or the decision is based on an erroneous legal standard or clearly erroneous findings of fact."  *See Sierra On-Line*, 739 F.2d at 1421.

## ANALYSIS

Through the instant *Ex Parte* Application, Plaintiff seeks to temporarily restrain the Trustee's Sale of the Subject Property that is currently scheduled for August 2, 2023.  (*See generally Ex Parte* App.; *see also* ECF No. 5-1 ("Mem.") at 9–10.)  The Court evaluates Plaintiff's request under the four *Winter* factors articulated above, *see supra* page 6, and—despite the numerous material factual contradictions—ultimately concludes that Plaintiff has established both the existence of serious questions going to the merits and that the balance of hardships tips sharply in his favor such that he is entitled to emergency injunctive relief.

First, the Court concludes that Plaintiff has demonstrated serious questions going to the merits on his fraud claim against Val-Chris.[3]  "Under California law, the 'indispensable

---

[3] Given the urgency of Plaintiff's *Ex Parte* Application, "[t]he Court need not decide at this stage of the litigation whether Plaintiff[] ha[s] shown a likelihood of success on the merits regarding [his] other . . . claims."  *See Innovation L. Lab v. Nielsen*, 310 F. Supp. 3d 1150, 1162 (D. Or. 2018).  Additionally, because Evoque is "not the foreclosing Defendant to be bound by the injunction and ha[s] no record interest in the Property," (*see* Adair Decl. ¶ 4), the Court need not evaluate Plaintiff's likelihood of success against Evoque at this time.

elements of a fraud claim include a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages.'" *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) (quoting *Moore v. Brewster*, 96 F.3d 1240, 1245 (9th Cir. 1996), *superseded by statute on other grounds as recognized in Nordin v. Scott*, No. 22-15816, ___ F. App'x ___, 2023 WL 4418595 (9th Cir. July 10, 2023)). Here, Plaintiff contends that he executed a loan with the original terms, but that Val-Chris later unilaterally and retroactively modified those terms without his knowledge. (*See* Hall Decl. ¶¶ 5, 10 & Ex. B.) Of course, these facts are sharply contested, with Val-Chris introducing evidence of documents purportedly signed by Plaintiff on November 30, 2022, containing the revised terms. (*See* LaMotte Decl. ¶¶ 6–9 & Ex. 1 & 2.) Despite these factual disagreements, however, Plaintiff's "allegations sufficiently support[] a claim of fraud in the execution[,]" *Hotels Nev. v. L.A. Pac. Ctr., Inc.*, 144 Cal. App. 4th 754, 764 (2006). In *Hotels Nevada*, for example, the appellant claimed to have signed an agreement for a twelve-month holdback period for $5 million of the purchase price of a property, but the appellee later sought to enforce a version of the agreement that contained a sixty-month holdback period to which the appellant had not agreed. *See id.* The California Court of Appeal "conclude[d] that [the appellant had] sufficiently alleged facts supporting a claim of fraud in the execution." *See id.* Similarly, while the Court cannot conclude that Plaintiff has established probable success on the merits given the serious factual inconsistencies and disputes between the Parties, the Court does conclude that Plaintiff has shown serious questions going to the merits of his fraud claim.

Second, if Plaintiff's claims do prove meritorious, Plaintiff will suffer irreparable harm absent a temporary restraining order. As Plaintiff notes, (*see* Mem. at 8), under California law, "it is to be presumed that the breach of an agreement to transfer real property cannot be adequately relieved by pecuniary compensation." *Wheat v. Thomas*, 209 Cal. 306, 317 (1930) (quoting Cal. Civ. Code § 3387). Plaintiff has therefore established a high likelihood of irreparable harm absent a temporary restraining order. *See, e.g., Hart v. Select Portfolio Servicing, Inc.*, No. 2:22-CV-03399-FLA (MRWx), 2023 WL

1  3035351, at *2 & n.1 (C.D. Cal. Feb. 17, 2023) ("Under California law, a foreclosure sale
2  of a person's home is presumed to qualify as irreparable harm." (citing Cal. Civ. Code
3  § 3387; *Real Est. Analytics, LLC v. Vallas*, 160 Cal. App. 4th 463, 475 (2008))); *see also*
4  *Rittenberg v. Decision One Mortg. Co.*, No. CV11-10635 CBM ANX, 2012 WL 10423361,
5  at *6 (C.D. Cal. Oct. 12, 2012) ("Given the drastic implications of a foreclosure, it is not
6  surprising to find courts quite frequently granting preliminary injunctions to forestall this
7  remedy while the court considers a case testing whether it is justified under the facts and
8  law." (quoting *Baypoint Mortg. Corp. v. Crest Premium Real Est. etc. Tr.,* 168 Cal. App.
9  3d 818, 825 (1985))).

   Third and fourth, the balance of equities and public interest also favor Plaintiff. As
for the balance of equities, "[a] court balancing the equities will look to the possible harm
that could befall the various parties." *Friedman v. Wells Fargo Bank N.A.*, No. CV14-
00123-BRO (PLAx), 2014 WL 12572925, at *2 (C.D. Cal. Jan. 23, 2014) (citing
*CytoSport, Inc. v. Vital Pharm., Inc.*, 617 F. Supp. 2d 1051, 1081 (E.D. Cal. 2009), *aff'd*,
348 F. App'x 288 (9th Cir. 2009)). "Causing a slight delay for Defendant's sale of the
Subject Property is greatly outweighed by Plaintiff's potential loss of his home." *See id.*
Regarding the public interest, "it is in the public interest that home foreclosure sales do not
occur until the merits of an individual's case has been assessed." *See id.*

   Consequently, under the sliding-scale variant, the Court concludes that Plaintiff has
sufficiently established the existence of serious questions going to the merits and that the
balance of hardships tips sharply in his favor such that he is entitled to a temporary
restraining order of the Trustee's Sale of the Subject Property that is currently scheduled
for August 2, 2023. *See, e.g.*, *Rittenberg*, 2012 WL 10423361, at *6 ("Plaintiffs' showing
of likelihood of success on the merits is weak, but they have made a strong showing of
irreparable harm. In such a case, the Court may grant a preliminary injunction." (citing
*Regents of Univ. of Cal. v. ABC, Inc.*, 747 F.2d 511, 515 (9th Cir. 1984); *Benda v. Grand
Lodge of Int'l Ass'n of Machinists & Aerospace Workers*, 584 F.2d 308, 315 (9th Cir.1978),
*cert. dismissed*, 441 U.S. 937 (1979))).

## CONCLUSION

In light of the foregoing, the Court **GRANTS** Plaintiff's *Ex Parte* Application (ECF No. 5) and, pending the Evidentiary Hearing set below, **TEMPORARILY RESTRAINS AND ENJOINS** Defendants, their employees, agents, and/or any other person or entity acting with them or on their behalf from conducting a Trustee's Sale for the property located at 1557 Regatta Road, Carlsbad, California 92011.

Generally, the Court would next set a hearing date for Defendants to show cause why the temporary restraining order should not be converted into a preliminary injunction. As noted above, however, the facts here are sharply disputed. While "the district court 'is not bound to decide doubtful and difficult questions of law or disputed questions of fact'" when ruling on a motion for a preliminary injunction, *see Int'l Molders'*, 799 F.2d at 551 (quoting *Dymo Indus.*, 326 F.2d at 143), and an evidentiary hearing is not required "when the magnitude of the inquiry would make it impractical," *see id.* at 555 (citing *SEC v. Frank*, 388 F.2d 486, 490 (2d Cir. 1968)), "proceeding on affidavits alone might be inappropriate" "[w]here sharply disputed the facts are simple and little time would be required for an evidentiary hearing." *Id.* (citing *Aguirre v. Chula Vista Sanitary Serv. & Sani-Tainer, Inc.*, 542 F.2d 779, 781 (9th Cir. 1976)). Because the Court concludes that an evidentiary hearing would not be "impractical" in this instance, the Court therefore **SETS** an Evidentiary Hearing concerning Plaintiff's likelihood of success on the merits for purposes of converting the Temporary Restraining Order into a Preliminary Injunction for Tuesday, August 17, 2023, at 9:30 a.m., in Courtroom 3A.[4]

Plaintiff and Jeff LaMotte, or another competent and knowledgeable representative of Val-Chris, **SHALL PERSONALLY ATTEND** and be prepared to answer questions

---

[4] Because the Court is unable to schedule this matter for an evidentiary hearing before August 17, 2023, the Court concludes that good cause exists to extend the Temporary Restraining Order beyond the fourteen days authorized by Federal Rule of Civil Procedure 65(b)(2). *See, e.g., Insider Software, Inc. v. ID Designs, Inc.*, No. 20-CV-05990-BLF, 2020 WL 5094842, at *5 (N.D. Cal. Aug. 28, 2020) ("[T]he unavailability of lead counsel constitutes good cause for extending the TRO beyond the initial fourteen-day period.").

from the Court. Although Val-Chris is required to attend the Evidentiary Hearing and to file the following documents, Evoque may choose to file any or all of the following documents and/or attend or participate in the Evidentiary Hearing. At the Evidentiary Hearing, the Parties will be permitted to offer documentary evidence and oral testimony from additional witnesses relevant to the negotiation and terms of the loan agreement.

On or before <u>August 10, 2023</u>, Plaintiff and Val-Chris **SHALL FILE** a joint list of witnesses and exhibits proposed to be offered/introduced at the hearing. For each witness, Plaintiff and Val-Chris briefly **SHALL OUTLINE** the subject matter of the proposed witness's testimony. The Court expects Plaintiff and Val-Chris reasonably to cooperate and to reach appropriate stipulations with respect to the authenticity and admissibility of exhibits and evidence at the hearing. Any such stipulations **SHALL BE OUTLINED** in Plaintiff and Val-Chris's joint list of witnesses and exhibits. To the extent that Plaintiff and Val-Chris genuinely disagree as to the admissibility of a particular item of evidence, they **SHALL LIST** the item of evidence and **SHALL INDICATE** the basis of the dispute. *Plaintiff and Val-Chris are **HEREBY CAUTIONED** that any witnesses or exhibits not listed in the joint list of witnesses and exhibits shall not be admitted or considered at the hearing.*

Also on or before <u>August 10, 2023</u>, Plaintiff and Val-Chris each **MAY FILE** a brief, not to exceed <u>ten (10) pages</u>, addressing the applicable law and burden of proof, what each expects the evidence at the hearing to show, any evidentiary disputes likely to be encountered at the hearing, and any other matters that will promote the just and efficient conduct of the hearing. *No further briefing shall be permitted, unless specifically requested by the Court.*

Plaintiff **SHALL SERVE** a copy of this Order on Evoque and **SHALL FILE PROOF OF SERVICE** <u>within two (2) court days</u> of the electronic docketing of this Order

/ / /

/ / /

/ / /

so that Evoque may have a full opportunity to respond to Plaintiff *Ex Parte* Application and to participate in and/or attend the Evidentiary Hearing.

**IT IS SO ORDERED.**

Dated:  July 31, 2023

_____
Honorable Todd W. Robinson
United States District Judge